UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BOURLAYE TOURE, A28-932-006,

Petitioner,

-v- 12-CV-919-JTC

ERIC H. HOLDER, Jr., Attorney General of the United States
MICHAEL PHILIPS, District Director
TODD TRYON, Asst. Field Office Director
IMMIGRATION AND CUSTOMS ENFORCEMENT,

Respondents.

## INTRODUCTION

Petitioner Bourlaye Toure, an alien under a final order of removal from the United States, has filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending the execution of a final immigration order of removal issued against him. Item 1. As directed by this court's order entered October 9, 2012 (Item 2), respondent[1] has submitted an answer and return (Item 4), along with an accompanying memorandum of law (Item 5), in opposition to the petition. For the reasons that follow, the petition is denied.

[1] The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Petitioner is a native and citizen of the Republic of Cote d'Ivoire (Ivory Coast), who was admitted to the United States at New York, New York, on or about May 18, 1987, as a non-immigrant visitor for pleasure, with authorization to remain in the United States for a temporary period until November 15, 1987. *See* Item 4-2 (Payan Decl., Exh. A), pp. 2, 12. He remained in the United States beyond November 15, 1987, without authorization from the former Immigration and Naturalization Service ("INS") or from DHS. *Id.* at 2.

On or about February 9, 1988, petitioner was convicted in New York State Supreme Court, County of Richmond, of Rape in the 1st Degree: Forcible Compulsion (2 counts), in violation of New York Penal Law Section 130.35, and Burglary in the 2nd Degree: Dwelling, with Explosives or Deadly Weapon (5 counts), in violation of New York Law Section 140.25-1. *Id.* at 2, 6, 19-20. He was sentenced to a term of incarceration of 12 years to 36 years. *Id.*

On May 5, 1988, petitioner was encountered by immigration officers at the Elmira Correctional Facility in Elmira, New York. *Id.* at 8, 15. Upon verification of his immigration status, an immigration detainer was lodged against him at the correctional facility. *Id.*

Deportation proceedings were commenced by an Order to Show Cause dated September 20, 1988, which charged petitioner with being subject to deportation from the United States, pursuant to Section 241(a)(2) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(2), as an alien who has remained in the United States for a longer time

than permitted, and pursuant to INA § 241(a)(4), as an alien convicted of a crime involving moral turpitude within 5 years of entry.[2] *Id*. at 12-14.

On March 8, 1993, an immigration judge ("IJ") found petitioner deportable from the United States pursuant to INA § 241(a)(4) due to his conviction of a crime of moral turpitude within 5 years of entry. *Id.* at 11. The IJ ordered petitioner deported from the United States to Egypt, or in the alternative to the Ivory Coast. *Id.* Petitioner did not appeal the IJ's decision to the Board of Immigration Appeals ("BIA"). Item 4-1 (Payan Decl.), ¶ 9.

On July 31, 2006, the Embassy of the Republic of Cote d'Ivoire (the "Embassy") issued a valid travel document (called a "*laissez passer*"), for petitioner. Item 4-2, pp. 17-18. However, when that travel document was issued, petitioner was in the custody of the New York State Department of Correctional Services and he was not yet eligible for release. *See id.* at 16. Accordingly, on February 13, 2012, DHS sent the Embassy a renewed request for a travel document to enable petitioner's removal. *Id.*

On March 6, 2012, upon his release from the New York State Department of Corrections and Community Supervision, petitioner was received into DHS custody. *Id.* at 8. As set forth in the declaration of DHS Deportation Officer Juanita Payan, confidential DHS records show that on March 8, 2012, petitioner was served with a formal Warning for Failure to Depart (Form I-229(a)), along with an instruction sheet listing actions that petitioner was required to complete within 30 days to assist in obtaining a travel document

---

[2]The INA has been amended and the sections renumbered since the deportation charges were lodged and determined against petitioner in this matter. In particular, provisions of 8 U.S.C. § 1251, relating to crimes of moral turpitude, which formed the basis of deportation charges against petitioner in 1988, are now found in 8 U.S.C. § 1227.

for his removal from the United States. The warning form advised petitioner, among other things, of criminal penalties under the INA for conniving or conspiring to prevent or hamper his departure from the United States, and also advised him that failure to comply, or to provide sufficient evidence of his inability to comply, may result in the extension of the removal period and subject him to further detention. Item 4-1, § 13.

The DHS records also show that between March and October 2012, DHS was in regular contact with the Embassy regarding the status of the request for a travel document for petitioner. *Id.* at § 14. The request remains pending with the Embassy as of this writing, and petitioner is currently being held at the Buffalo Federal Detention Facility in Batavia, New York, pending his removal from the United States.

On May 30, 2012, petitioner was served with a letter informing him that, upon review of his custody status, DHS had determined to continue detention pending removal because he "pose[d] a significant threat to the safety and security of the community and … a risk of flight." Item 4-2, p. 9. This determination was based on several considerations, including limited information regarding petitioner's "equities in the United States, … no evidence of community ties, community sponsorship, employment prospects or rehabilitation[, and his] lengthy and egregious criminal record demonstrat[ing] a wanton disregard for the laws of the United States." *Id.*

On August 29, 2012, a panel was convened at the Buffalo Federal Detention Facility to conduct further review of petitioner's custody status, including an in-person interview. Following completion of the file review and interview, petitioner was notified on September 20, 2012, that DHS had determined to continue his detention in DHS custody. *Id.* at 2-3.

The petition in this action was filed on September 28, 2012, seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that petitioner's continued detention in post-removal order custody is unlawful since it has exceeded the presumptively reasonable six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

**DISCUSSION**

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas*, 533 U.S. at 687 (petition under § 2241 is basic method for statutory and constitutional challenges to detention following order of removal).

The authority to detain aliens after the issuance of a final removal order is set forth in INA § 241(a), which allows the Attorney General to accomplish an alien's removal from the United States within a period of ninety days following the entry of a final order of deportation or removal (the "removal period").[3] *See* INA §§ 241(a)(1)(A)-(B). Detention

---

[3]INA § 241(a)(1)(B) provides:

The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.
(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

during the ninety-day removal period is mandatory. *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien."). The statute further provides that, "[u]nder no circumstance during the removal period shall the Attorney General release an alien who has been found … deportable under section 1227(a)(2),"[4] INA § 241(a)(2), and authorizes the Attorney General to continue detention of criminal aliens beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …." INA § 241(a)(6).[5]

In *Zadvydas*, the Supreme Court was presented with the challenge of reconciling this apparent authorization of indefinite detention with the Fifth Amendment's prohibition against depriving a person of their liberty without due process. The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of

---

8 U.S.C. § 1231(a)(1)(B).

[4]As pertinent here, 8 U.S.C. § 1227(a)(2) provides:

(A) General crimes
(i) Crimes of moral turpitude
Any alien who--
(I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and
(II) is convicted of a crime for which a sentence of one year or longer may be imposed,
is deportable.

[5]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700. Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …." *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal. Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to the Headquarters Post-Order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future to the country to which the alien was ordered removed and there is no third country willing to accept the alien." 8 C.F.R. § 241.13(d)(1). The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal

and to cooperate in the process of obtaining necessary travel documents." 8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question. Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and that there are no special circumstances justifying continued detention, then it must order the detainee released. 8 C.F.R. § 241.13(g)(1). However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination. *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

As set forth above, in this case petitioner was received into DHS custody on March 6, 2012, upon his release from state custody. *See* Item 4-1, ¶¶ 11, 12. As an alien under a final order of removal based on conviction of a crime of moral turpitude, petitioner's

detention was mandatory for the ninety-day removal period pursuant to INA § 241(a)(2). Furthermore, upon determining that petitioner posed a significant threat to the safety and security of the community and a risk of flight, DHS was authorized under INA § 241(a)(6) to continue the detention beyond the expiration of the ninety-day period for "a period reasonably necessary to secure removal." *Zadvydas*, 533 U.S. at 699-700.

Under *Zadvydas*, the first six months of detention following a final removal order are "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Once the six-month period has passed, the burden shifts to the alien detainee to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Only if the alien makes this showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut" the alien's showing that there is no significant likelihood that he or she will be deported in the reasonably foreseeable future. *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights.").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*. The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to the Republic of the Ivory Coast in the reasonably foreseeable future. He simply alleges that the Embassy "has not issued any travel documents and there is no certainty as to when, if ever, such papers will be issued." Item 1, ¶ 11.

However, as discussed above, the Embassy did previously issue a travel document for petitioner in 2006, at a time when he was still in state custody and ineligible for release. *See* Item 4-1, ¶ 10. In February 2012, upon notification of petitioner's pending release to DHS custody, DHS promptly requested a new travel document for petitioner. *Id.* at ¶ 11. The available records reflect that, since that renewed request, there has been regular and continuing communications between DHS and the Embassy (*see id.* at ¶¶ 14-15), and there is nothing to be found in the submissions before the court that would indicate a likelihood that Ivory Coast authorities are inclined to deny the request. To the contrary, the available evidence shows that in recent years, DHS has successfully repatriated several aliens to the Ivory Coast, and that a general delay in alien removals has occurred during the past year due to pending parliamentary and presidential elections. *See id.* at 17.[6] These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document will be accomplished in the reasonably foreseeable future, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to the Ivory Coast.

Significantly, petitioner has provided no evidence to contradict DHS's expectation that the verification required for the issuance of a travel document will be accomplished in the reasonably foreseeable future. Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*. *See* Item 1, ¶¶ 1, 12-13, 16-21. However, several cases decided within this

---

[6] For example, DHS statistical reports show that in fiscal year ("FY") 2009, a total of 24 aliens were repatriated to the Ivory Coast; in FY 2010, 31 aliens were repatriated to the Ivory Coast; and in FY 2011, 27 aliens were repatriated to Ivory Coast. Item 4-1, ¶ 17 (citing DHS Yearbook of Immigration Statistics: 2011, Table 41: http://www.dhs.gov/yearbook-immigration-statistics-2011-3).

district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time, insufficient to meet the petitioner's burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*. *See, e.g., Khaleque v. Dep't of Homeland Sec.*, 2009 WL 81318, at *4 (W.D.N.Y. Jan. 9, 2009) (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future."); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial

burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future …." *Zadvydas*, 533 U.S. at 701. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

**CONCLUSION**

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: 3/27/2013
p:\pending\2012\12-919.2241.mar22.2013